# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.M.M., | : | NO. |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| ADELPHOI SERVICES INC. | : | |
| BRADFORD COUNTY, and | : | |
| JESSICA VANDERPOOL, in her | : | |
| Individual and official capacity, | : | JURY TRIAL DEMANDED |
| | : | |
|     *Defendants*. | : | |

## COMPLAINT

AND NOW, comes the Plaintiff, A.M.M., through counsel, who files this Complaint against the Defendants, Adelphoi Services Inc., Bradford County, and Jessica Vanderpool, in her individual and official capacity, and on Plaintiff's own knowledge, and otherwise upon information and belief, Plaintiff avers as follows:

## INTRODUCTION

1. This matter arises from the childhood sexual abuse of A.M.M. by Tabitha Dunn ("***Dunn***"), former employee of Adelphoi Services Inc., while A.M.M. was under the care and custody of Bradford County.

1

## PARTIES

2. Plaintiff, A.M.M. ("*Plaintiff*" or "*A.M.M.*"), is an adult male that resides in Pennsylvania who, at all times relevant to this litigation, was a minor child.

3. Plaintiff is identified herein by using a pseudonym due to the nature of the allegations, specifically that A.M.M. is a victim of childhood sexual abuse.

4. Plaintiff will make Defendants aware of his identity and Defendants will suffer no prejudice for Plaintiff proceeding anonymously.

5. Defendant Adelphoi Services Inc. ("*Adelphoi*") is a Pennsylvania domestic nonprofit corporation with an address of 1119 Village Way, Latrobe, Pennsylvania 15650.

6. At all times relevant, Adelphoi was acting by and through its agents, employees, and assigns who were acting within the scope of their authority, course of their employment, and under the direct control of Adelphoi.

7. Defendant Bradford County (the "*County*") is a Pennsylvania local government agency with an address of 301 Main Street, Towanda, Pennsylvania 18848, and which is located within this District.

8. At all times relevant, the County operated a department known as Bradford County Children and Youth Services ("*BCCYS*").

9. At all times relevant, BCCYS was acting by and through its agents, employees, and assigns who were acting within the scope of their authority, course of their employment, and under the direct control of CYS.

10. Defendant Jessica Vanderpool ("***Vanderpool***"), in her individual and official capacity, is an adult individual with an address of 10 2nd Street, Apartment Number 2, Towanda, Pennsylvania 18848.

11. At all relevant times, Vanderpool, in her individual and official capacity, was a caseworker for, and an agent, employee, and/or servant of, the County.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives U.S. district courts jurisdiction over civil actions arising under the laws of the United States, including a civil action for deprivation of rights under 42 U.S.C. § 1983.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as (1) some parties reside in this District and all parties reside within Pennsylvania, and (2) a substantial part of the events giving rise to the claims in this action occurred in this District.

## FACTS

14. At all relevant times, A.M.M. was a minor child under the care and supervision of BCCYS.

15. In or about the summer of 2018, BCCYS placed A.M.M. in the home of Ellie McCarty, a foster home in Sullivan County (the "**Foster Home**").

16. Despite the foster home being in Sullivan County, A.M.M. was under the care and supervision of BCCYS.

17. At all relevant times, Vanderpool,42 an adult employee and/or agent of the County, was assigned as A.M.M.'s caseworker.

18. Upon information and belief, BCCYS contracted with Adelphoi to provide in-home services to A.M.M.

19. At all relevant times, Tabitha Dunn ("**Dunn**"), an adult employee and/or agent of Adelphoi, was assigned as A.M.M.'s in-home worker.

20. Approximately one (1) month after being placed in the Foster Home, Dunn began showing up unannounced to spend time with A.M.M.

21. Dunn sent personal messages to A.M.M. on her phone.

22. Dunn communicated with A.M.M. both during and after her work hours.

23. In doing so, Dunn gained A.M.M.'s trust.

24. Upon information and belief, in or about the summer and/or fall of 2018, a Protection From Abuse ("*PFA*") order was entered against Dunn.

25. Upon information and belief, the PFA protected A.M.M. from Dunn.

26. Upon information and belief, the PFA was instituted due to Dunn's inappropriate sexual grooming and communication with A.M.M.

27. Vanderpool and BCCYS were aware of the PFA.

28. Despite the PFA, Dunn continued to communicate with A.M.M.

29. Despite the PFA, Dunn continued to visit A.M.M. at the Foster Home.

30. Despite the PFA, Vanderpool allowed Dunn to have contact with A.M.M.

31. One day, in the fall and/or early winter of 2018. Dunn took A.M.M. out of the Foster Home in her vehicle under the guise of teaching him how to drive.

32. While A.M.M. drove the vehicle, Dunn began rubbing her hand up and down A.M.M.'s thigh.

33. Dunn directed A.M.M. to pull off the road and park the vehicle.

34. Once parked, Dunn climbed on top of A.M.M. in the driver's seat.

35. Dunn began touching and grabbing A.M.M.'s body and kissing him.

36. In the following weeks, Dunn continued to show up at the Foster Home unannounced, make sexual advances and sexual comments to A.M.M., and groom A.M.M. for sexual abuse.

37. Dunn also became "friends" with A.M.M. on Facebook.

38. Dunn used Facebook to communicate with A.M.M. and discuss personal issues.

39. A.M.M. was a vulnerable child under the custody, control, and supervision of BCCYS.

40. A.M.M. was especially vulnerable due to his unstable childhood.

41. Dunn groomed A.M.M. for sexual abuse.

42. Dunn gave A.M.M. special treatment.

43. Dunn spent an excessive amount of personal time with A.M.M.

44. Despite Dunn's inappropriate contact with A.M.M., Adelphoi continued Dunn's employment working with vulnerable children.

45. Dunn took A.M.M. to have sexual contact in her vehicle several more times in October and November of 2018.

46. In or about February of 2019, Dunn kidnapped A.M.M. from the Foster Home and did not return him.

47. Eventually, A.M.M. was reported as a missing child.

48. Dunn held A.M.M. captive at her home in Bradford County, Pennsylvania.

49. During that time, Dunn forced A.M.M. to have sexual intercourse with her almost daily, forced A.M.M. to perform sexual acts upon her, and performed sexual acts on A.M.M.

50. Dunn paid A.M.M. money to have sex with her whenever she wanted.

51. Dunn also physically abused A.M.M., including by burning him with cigarettes and withholding food from him.

52. Dunn lived with other adult members of her family.

53. Dunn took steps to hide A.M.M. from other members of her household.

54. During the day, when Dunn left the house for work, she would lock A.M.M. in a room without food, water, or a restroom for hours at a time.

55. Other times, Dunn locked A.M.M. in an RV camper on the property.

56. Other times, Dunn would remove A.M.M. from the house and drive him in her vehicle for hours until nighttime and then sneak him back into her room.

57. Dunn took A.M.M.'s phone from him and would not allow him to have any contact with the outside world.

58. Dunn threatened to hurt A.M.M. and his family if he told anyone, if he left, or if he did not do what she wanted.

59. Dunn threatened to wreck her car with A.M.M. in it if he did not do what she wanted.

60. One time, Dunn punched A.M.M. in the face when he did not want to have sex with her.

61. Another time, Dunn pressed her elbow into his throat until A.M.M. did what she wanted.

62. In or about March of 2019, Dunn drove A.M.M. across state lines to Binghamton, New York to buy him clothes at Walmart and to get frozen yogurt.

63. Afterwards, Dunn allowed A.M.M. to drive her vehicle, directing him to drive back to her home.

64. A.M.M. finally seized the opportunity to escape Dunn's captivity and began speeding on the highway, hoping to get pulled over by the police.

65. A.M.M.'s plan worked, they were pulled over on a traffic stop, and A.M.M. and Dunn were taken into custody.

66. Dunn directed A.M.M. to lie to the police and tell them that Dunn and A.M.M. were on a date.

67. A.M.M., however, told the police that Dunn kidnapped him and that he was being held against his will.

68. Vanderpool picked A.M.M. up at the police station and placed him back in BCCYS custody.

69. Dunn was charged and eventually convicted criminally for her illegal conduct under Court of Common Pleas of Sullivan County docket number CP-57-CR-1-2019 and Court of Common Pleas of Bradford County docket number CP-08-CR-596-2020.

70. Even after A.M.M. was back in the physical custody of BCCYS, Dunn used an alias to send A.M.M. a letter.

71. But for Dunn's employment with Adelphoi, A.M.M. would not have encountered Dunn.

72. Adelphoi knew or should have known that Dunn had inappropriate contact with A.M.M.

73. Despite such concerns about Dunn's inappropriate and suspicious behavior, Adelphoi did not take steps to intervene or protect A.M.M.

74. Adelphoi showed deliberate indifference to Dunn's sexual grooming and inappropriate behavior towards A.M.M.

75. Adelphoi employees, including Adelphoi administrators with the authority to take corrective action, were aware of Dunn's behavior as described herein.

76. BCCYS knew or should have known that Dunn had inappropriate contact with A.M.M.

77. Vanderpool, an employee and/or agent of BCCYS, suspected that Dunn was having an inappropriate relationship with A.M.M.

78. Despite such concerns about Dunn's inappropriate and suspicious behavior, BCCYS did not take any steps to intervene or protect A.M.M.

79. BCCYS showed deliberate indifference to Dunn's sexual grooming and inappropriate behavior towards A.M.M.

80. BCCYS employees, including BCCYS administrators with the authority to take corrective action, were aware of Dunn's behavior as described herein.

81. Due to the actions and omissions of Defendants outlined herein, the Plaintiff was sexually abused, suffering injury.

## COUNT I
### Violation of 42 U.S.C. § 1983 for State Created Danger
*Plaintiff v. Bradford County and Vanderpool,*
*in her individual and official capacity*

82. The allegations throughout this Complaint are incorporated as if set forth at length.

83. Plaintiff was deprived of a constitutionally protected right by the conduct of a person acting under the color of state law.

84. Namely, Plaintiff was deprived of his constitutionally protected right to bodily integrity protected by the Fourteenth Amendment Due Process Clause.

85. Under the Fourteenth Amendment, A.M.M. had a right to bodily integrity, which was violated by Dunn's sexual abuse.

86. The right that Plaintiff was deprived of was clearly established as of 2018.

87. It was clearly established that state actors may not bring a private citizen into a dangerous situation, where state actors are aware of the risk of serious harm and are responsible for creating the opportunity for that harm to happen.

88. Likewise, reckless, conscience shocking conduct that alters the status quo and places a child at substantial risk of serious, immediate, and proximate harm is unconstitutional; again, this idea was clearly established by 2018.

89. Defendants affirmatively used their authority to create a danger to A.M.M. and/or rendered A.M.M. more vulnerable to danger than had they not acted.

90. The harm ultimately caused to Plaintiff was foreseeable and fairly direct.

91. Defendants had actual knowledge of, or an awareness of, a risk to A.M.M. that was sufficiently concrete to put Defendants on notice of the harm.

92. As explained fully herein, A.M.M. was a vulnerable child in foster care, with a history of abuse and familial instability.

93. Moreover, by 2018 Defendants were fully aware of the risks of sexual abuse of children within foster care by those holding positions of power, including those adults assigned to work with the children.

94. Defendants were aware of this risk and the likelihood that A.M.M. would be a target of sexual abuse while in foster care.

95. Defendants were aware of the inappropriate behavior that Dunn demonstrated with A.M.M.

96. Despite these known risks, Defendants allowed Dunn to spend inappropriate personal time with A.M.M., remove him from the foster home, have an inappropriate relationship with A.M.M., and continued to allow her to work with A.M.M. through Adelphoi and Defendants.

97. Defendants continued to allow Dunn to have access to A.M.M. even after a PFA was ordered to protect A.M.M.

98. As a result, A.M.M. was kidnapped, held against his will, threatened, physically harmed, and repeatedly raped by Dunn.

99. Defendants, as state actors, acted with a degree of culpability that shocks the conscience.

100. Defendants had time to deliberate and make unhurried judgments regarding A.M.M.'s foster care placement and care.

101. The relationship between Defendants and A.M.M. was such that A.M.M. was a foreseeable victim and/or a member of a discrete class of persons subjected to the potential harm brought about by Defendants' actions.

102. Defendants affirmatively used their authority in a way that created a danger to A.M.M. and/or that rendered A.M.M., a minor child, more vulnerable to danger than had the state not acted at all.

103. Defendants affirmatively used their authority in a way that created a danger to Plaintiff and/or that rendered Plaintiff, a minor child, more vulnerable to danger than had the state not acted at all.

104. As a direct and proximate result of Defendants' actions and omissions, A.M.M. suffered severe and permanent injuries.

WHEREFORE, Plaintiff requests damages against Defendants Bradford County and Vanderpool, jointly and severally, including an award of attorneys' fees and costs, and such other relief as this Honorable Court deems appropriate.

### COUNT II
**Violation of 42 U.S.C. § 1983 for Special Relationship**
*Plaintiff v. Bradford County and Vanderpool,*
*in her individual and official capacity*

105. The allegations throughout this Complaint are incorporated as if set forth at length.

106. Plaintiff was deprived of a constitutionally protected right by the conduct of a person acting under the color of state law.

107. Namely, Plaintiff was deprived of his constitutionally protected right to bodily integrity protected by the Fourteenth Amendment Due Process Clause.

108. Under the Fourteenth Amendment, A.M.M. had a right to bodily integrity, which was violated by Dunn's sexual abuse.

109. The right that Plaintiff was deprived of was clearly established as of 2018.

110. When Defendants placed A.M.M. in the Foster Home and took legal custody of A.M.M., Defendants entered a special relationship with A.M.M.

111. Defendants' special relationship with A.M.M. dictated that Defendants protect A.M.M. from foreseeable harm.

112. After such special relationship with A.M.M. existed, Defendants' conduct shocked the conscience and/or was deliberately indifferent to the health and safety of A.M.M.

113. Defendants' special relationship with A.M.M. imposed on Defendants' affirmative duties to prevent harm to A.M.M.

114. Defendants violated their affirmative duties of protection as follows:

    a. Failing to investigate Dunn's background;

  b. Ignoring and/or disregarding Dunn's known history of sexually abusing and having inappropriate relationship(s) with children, including A.M.M.;

  c. Failing to supervise Dunn's relationship with A.M.M.;

  d. Covering for Dunn's known sexual history, including that with A.M.M.;

  e. Failing to ensure A.M.M. was supervised in the Foster Home;

  f. Maintaining official policies, customs, or practices that were indifferent to the risk of sexual victimization to children in County custody;

  g. Failing to appropriately train and/or supervise employees; and

  h. Taking affirmative actions that placed A.M.M. at a risk of harm.

115. As a direct and proximate result of Defendants' actions and omissions, A.M.M. suffered severe and permanent injuries.

WHEREFORE, Plaintiff requests damages against Defendants Bradford County and Vanderpool, jointly and severally, including an award of attorneys' fees and costs, and such other relief as this Honorable Court deems appropriate.

## COUNT III
**Negligence, Gross Negligence, and Recklessness**
*Plaintiff v. the County*

116. The allegations throughout this Complaint are incorporated as if set forth at length.

117. At all times relevant, the County vis-à-vis BCCYS owed a duty to protect A.M.M. and other children within its care from sexual abuse.

118. The County is a local agency under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. §§ 8541-8564.

119. Under the PSTCA, a local agency is generally shielded from tort liability for negligent acts, subject to certain exceptions. Plaintiff's claim(s) herein falls under the PSTCA exception enumerated at 42 Pa.C.S. § 8542(b)(9), which states: "Sexual abuse.--Conduct which constitutes an offense enumerated under [42 Pa.C.S. § 5551(7)] (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence."

120. In this case, Plaintiff was subject to a violation of § 5551(7).

121. As such, the County does not have PSTCA immunity in this matter.

122. The County violated its duty, and was negligent, careless, and/or reckless as follows:

a. By failing to establish adequate child abuse prevention policies, procedures, and practices;

b. By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;

c. By failing to adequately screen and supervise all those with access to children, including Plaintiff;

d. By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of child sexual abuse;

e. By failing to adequately monitor and supervise Dunn, the Foster Home, and Plaintiff;

f. By failing to know the risks of sexual abuse inherent in youth serving activities and foster care;

g. By failing to require child sex abuse training for parents/guardians, employees, agents, foster parents, and children;

h. By failing to recognize the signs that Dunn was a child sexual predator;

i. By failing to conduct an appropriate background check on Dunn;

j. By allowing Dunn to work with children despite her history of inappropriate behavior with children;

k. By failing to terminate Adelphoi and/or Dunn their/her role despite Dunn's red flags and lack of fitness for the role; and

l. By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344 & 371, as adopted in Pennsylvania.

123. As a direct and proximate cause of the County's actions and omissions, and breach of the duties of reasonable care, Plaintiff was sexually abused, resulting in damages.

## COUNT IV
### Negligence, Gross Negligence, and Recklessness
*Plaintiff v. Adelphoi*

124. The allegations throughout this Complaint are incorporated as if set forth at length.

125. At all times relevant, Adelphoi owed a duty to protect Owen and other children from sexual abuse.

126. Adelphoi violated its duty, and was negligent, careless, and/or reckless as follows:

    a.    By failing to establish adequate child abuse prevention policies, procedures, and practices;

    b.    By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;

    c.    By failing to adequately screen and supervise all those with access to children, including Plaintiff;

    d.    By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of child sexual abuse;

    e.    By failing to adequately monitor and supervise Dunn and Plaintiff;

    f.    By failing to know the risks of sexual abuse inherent in youth serving activities and foster care;

    g.    By failing to require child sex abuse training for parents/guardians, employees, agents, foster parents, and children;

    h.    By failing to recognize the signs that Dunn was a child sexual predator;

    i.    By failing to conduct an appropriate background check on Dunn;

    j.    By allowing Dunn to work with children despite her history of inappropriate behavior with children;

    k.    By failing to terminate Dunn despite Dunn's red flags and lack of fitness for the role; and

    l.    By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344 & 371, as adopted in Pennsylvania.

127. As a direct and proximate cause of Adelphoi's actions and omissions, and breach of the duties of reasonable care, A.M.M. was sexually abused, resulting in damages.

WHEREFORE, the Plaintiff requests damages against the Defendants, the County and Adelphoi, jointly and severally, a including attorneys' fees, costs, pre and post judgment interest, and any other such other relief as this Honorable Court deems appropriate.

                                        Respectfully Submitted,

                                        **ANDREOZZI + FOOTE**

Dated: September 20, 2023        */s/ Nathaniel L. Foote*
                                        Nathaniel L. Foote, Esq. (PA #318998)
                                        nate@vca.law

                                        */s/ Renee Franchi*
                                        Renee Franchi, Esq. (PA #313950)
                                        renee@vca.law

                                        4503 North Front Street
                                        Harrisburg, PA 17110
                                        Ph: 717.525.9124 | Fax: 717.525.9143
                                        *Attorneys for Plaintiff*